# Exhibit A

1  Don A. Ernst, State Bar No. 65726
    (DAE@ErnstLawGroup.com)
2  Taylor Ernst, State Bar No. 277901
    (TE@ErnstLawGroup.com)
3  **ERNST LAW GROUP, APC**
    1020 Palm Street
4  San Luis Obispo, California 93406
    Telephone: (805) 541-0300
5  Fax: (805) 541-5168

6  Brian S. Kabateck, State Bar No. 152054
    (bsk@kbklawyers.com)
7  Richard L. Kellner, State Bar No. 171416
    (rlk@kbklawyers.com)
8  **KABATECK BROWN KELLNER LLP**
    644 S. Figueroa Street
9  Los Angeles, California 90017
    Telephone: (213) 217-5000
10  Fax: (213) 217-5010

11  *Attorneys for Plaintiff and the Proposed Class*

12

13                **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

14                        **FOR THE COUNTY OF ORANGE**

15  KENNETH RICE, individually, and on behalf | Case No.
16  of all others similarly situated,

17              Plaintiffs,                    | **CLASS ACTION COMPLAINT**

18                  vs.                        | **JURY TRIAL DEMANDED**

19  INSYNC, an unknown type of corporation,
    COTTAGE HEALTH SYSTEM, a California
20  corporation; SANTA BARBARA COTTAGE
    HOSPITAL, a California corporation,
21  GOLETA VALLEY COTTAGE HOSPITAL,
    a California Corporation, and SANTA YNEZ
22  VALLEY HOSPITAL, and DOES 1-100,
    Inclusive,
23
24              Defendants.

25

26

27

28

                                    - 1 -
                          **Class Action Complaint**

1      Plaintiff KENNETH RICE, individually and on behalf of the class described below, by

2 his attorneys, makes the following allegations based upon information and belief, except as to

3 those allegations specifically pertaining to Plaintiff and his counsel, which are based on personal

4 knowledge.  Plaintiff brings this action for damages against Defendants INSYNC, COTTAGE

5 HEALTH SYSTEM, SANTA BARBARA COTTAGE HOSPITAL, GOLETA VALLEY

6 COTTAGE HOSPITAL, and SANTA YNEZ VALLEY HOSPITAL.

7

8                            **NATURE OF THE ACTION**

9      1.     From October 8, 2013 through December 2, 2013, the confidential medical records

10 of approximately 32,500 patients at the hospitals affiliated with defendant COTTAGE HEALTH

11 SYSTEM (hereinafter, referred to collectively as COTTAGE HOSPITAL)[1] were negligently

12 disclosed and released to the public on the internet.

13      2.     These medical records were placed on the internet by COTTAGE HOSPITAL,

14 which was charged with the non-delegable duty to maintain the confidentiality of the records.

15      3.     Upon information and belief, COTTAGE HOSPITAL retained co-defendant

16 INSYNC as a vendor to disclose, release, and distribute the medical files in a system that would

17 be fully accessible on the internet.  According to COTTAGE HOSPITAL, co-defendant

18 INSYNC failed to provide any encryption or other security to prevent anyone from reading the

19 medical records for 32,500 patients that were disclosed and released on the internet – for a

20 period of 2 months.

21      4.     For eight weeks, the released records were readily available to read by anyone

22 who "surfed" the internet.

23      5.     The extent of the breach is enormous.  This was not a situation where some

24 isolated medical record was disclosed and released on the internet. The medical files for 32,500

25 patients who received treatment over a period of over 4 years at COTTAGE HOSPITAL were

26 taken from the hospital, placed in electronic form on various servers connected to the internet,

27 _____

28 [1]   Those hospitals are defendants SANTA BARBARA COTTAGE HOSPITAL, SANTA YNEZ VALLEY HOSPITAL, and GOLETA VALLEY HOSPITAL

1  where they could be reviewed, copied or otherwise examined by any of the hundreds of millions
2  of people who "surf" the internet every day.

3      6.      And, in fact, the medical records that were disclosed and released on the internet
4  were actually viewed by third parties.   On or around December 2, 2013, a third party called
5  COTTAGE HOSPITAL to tell them that he was able to read the confidential medical records of
6  patients that were on the internet.

7      7.      How was it possible that the medical records could be placed in the public domain
8  of the internet, for anyone to view for two months, without COTTAGE HOSPITAL detecting
9  that anyone surfing the internet could view the confidential medical records of 32,500 of its
10  patients?  The only answer is that COTTAGE HEATH was completely negligent in its
11  obligations under the CMIA and HIPPA.

12      8.      Strikingly, it was not COTTAGE HOSPITAL's internal security monitoring team
13  (if it had one) that discovered the fact that 32,500 patient medical records had been
14  disclosed/released on the internet such that anyone could view it for almost **2 months.**  Instead,
15  a third party who viewed the medical records on the internet, contacted COTTAGE HOSPITAL
16  and told them that these medical records could be viewed by anyone surfing the internet.

17      9.      Under the CMIA and HIPPA, COTTAGE HOSPITAL had a non-delegable duty
18  to not only maintain the security of confidential medical records that are released/disclosed on
19  the internet, but also to institute sufficient security management safeguards to detect and prevent
20  such breaches from occurring.

21      10.     The CMIA was enacted to protect patients from this kind of negligence, and
22  provides statutory damages that are awardable to each patient whose confidential records were
23  improperly disclosed, released and/or maintained so as to preserve their confidentiality.  This
24  type of case is ideally suited for class action treatment.

25      11.     Accordingly, Plaintiff KENNETH RICE brings this class action against Defendant
26  on behalf of himself and others similarly situated, to obtain the monetary damages authorized
27  under the CMIA.

28

1    12.    The class that Plaintiff seeks to certify is defined as follows:

2           *All Patients who attended a Cottage Health System Hospital, such as*

3           *Santa Barbara Cottage Hospital, Santa Ynez Valley Hospital, or Goleta*

4           *Valley Hospital, from September 29, 2009 and December 2, 2013, whose*

5           *confidential information and/or records were negligently released and/or*

6           *disclosed by Cottage Hospital and/or contractors acting on behalf of*

7           *Cottage Hospital during any portion of the period from October 8, 2013*

8           *through December 2, 2013.*

9

10                              **THE PARTIES**

11   13.    Plaintiff KENNETH RICE was at all relevant times a resident of the State of

12   California.

13   14.    Plaintiff is informed and believes, and on that basis alleges, defendant INSYNC is

14   an unknown type of corporation with its principal place of business located at 23041 Avenida

15   De La Carlota, Laguna Hills, CA 92653, which is in Orange County, California.

16   15.    Plaintiff is informed and believes, and on that basis alleges, that the defendant

17   COTTAGE HEALTH SYSTEM is a California corporation with its principal place of business

18   located at 400 West Pueblo Street, Santa Barbara, CA 93105.

19   16.    Plaintiff is informed and believes, and on that basis alleges, that defendant

20   SANTA BARBARA COTTAGE HOSPITAL is a California corporation with its principal place

21   of business located at 400 W. Pueblo Street Santa Barbara, CA 93105.

22   17.    Plaintiff is informed and believes, and on that basis alleges, that defendant

23   GOLETA VALLEY COTTAGE HOSPITAL is a California corporation with its principal place

24   of business located at 351 S. Patterson Avenue, Santa Barbara, CA 93111.

25   18.    Plaintiff is informed and believes, and on that basis alleges, that defendant

26   SANTA YNEZ VALLEY HOSPITAL is a California corporation with its principal place of

27   business located at 2050 Viborg Road, Solvang, CA 93463.   Defendants COTTAGE HEALTH

28   SYSTEM, SANTA BARBARA COTTAGE HOSPITAL, GOLETA VALLEY COTTAGE

1    HOSPITAL and SANTA YNEZ VALLEY HOSPITAL shall be collectively referred to as

2    "COTTAGE HOSPITAL."

3         19.    Plaintiff is currently ignorant of the true names and capacities, whether individual,

4    corporate, associate, or otherwise, of the Defendants sued herein under the fictitious names Does

5    1 through 100, inclusive, and therefore sues such Defendants by such fictitious names.  Plaintiff

6    will amend this complaint to allege the true names and capacities of said fictitiously named

7    Defendants when their true names and capacities have been ascertained.  Plaintiff is informed

8    and believes and thereon alleges that each of the fictitiously named Doe Defendants are legally

9    responsible in some manner for the events and occurrences alleged herein, and for the damages

10   suffered by Plaintiff and members of the class.

11        20.    Plaintiff is informed and believes, and on that basis alleges, that all Defendants,

12   including the fictitious Doe Defendants, were at all relevant times acting as actual agents,

13   captive agents or brokers, conspirators, ostensible agents, partners, brokers and/or joint

14   venturers, and employees of all other Defendants, and that all acts alleged herein occurred

15   within the course and scope of said agency, employment, partnership, joint venture, conspiracy

16   and/or enterprise, and with the express and/or implied permission, knowledge, consent,

17   authorization, and ratification of their co-defendants; however, this allegation is pleaded as an

18   "alternative" theory wherever not doing so would result in a contradiction with other allegations.

19                                    **GENERAL ALLEGATIONS**

20        21.    All allegations in this complaint are based on information and belief and/or are

21   likely to have evidentiary support after a reasonable opportunity for further investigation or

22   discovery.  Whenever allegations in this complaint are contrary or inconsistent, such allegations

23   shall be deemed alternative.

24

25                                   **JURISDICTION AND VENUE**

26        22.    This Court has jurisdiction over the entire action by virtue of the fact that this is a

27   civil action wherein the matter in controversy, exclusive of interest and costs, exceeds the

28   jurisdictional minimum of the Court.  The acts and omissions complained of in this action took

1   place in the State of California.  Venue is proper because this is a class action, the acts and/or

2   omissions complained of took place, in whole or in part, within the venue of this Court, and/or

3   one or more Defendants resides within the venue of this court.

4

5                              **FACTUAL BACKGROUND**

6        23.    The COTTAGE HOSPITAL is a provider of medical treatment and services.  In

7   its regular course of providing medical treatment and services, the COTTAGE HOSPITAL

8   collects personal information from its patients, including but not limited to patient names,

9   addresses, telephone numbers, social security numbers and financial information.

10       24.    In its regular course of providing medical treatment and services, COTTAGE

11  HOSPITAL also collects, generates and stores medical information concerning its patients,

12  including but not limited to records of health conditions, diagnostic codes, admission and

13  discharge dates, and diagnoses.

14       25.    Upon information and belief, COTTAGE HOSPITAL entered into an agreement

15  with INSYNC (at some date prior to October 8, 2013), where INSYNC would assist COTTAGE

16  HOSPITAL in its placement of electronic copies of four years of medical files for its over

17  32,500 patients for viewing on the internet.  According to COTTAGE HOSPITAL, the

18  electronic documents that were placed on the internet should not have been viewable by the

19  public.

20       26.    However, for at least for the period from October 8, 2013 through December 2,

21  2013, encryptions,passwords, and other security features were not in place for the medical

22  records of 32,500 of COTTAGE HOSPITAL's patients that were affirmatively placed for

23  viewing on the internet.

24       27.    Under the CMIA and HIPPA, COTTAGE HOSPITAL had a non-delegable

25  obligation to take appropriate preventative measures to protect the confidentiality of medical

26  records that were affirmatively placed on the internet, and also implement policies and

27  procedures to prevent, detect, contain and correct security violations.

28

1      28.    To the extent COTTAGE HOSPITAL might claim that it had implemented such

2  policies and practices, they were undoubtedly inadequate, negligent and in violation of the

3  CMIA and HIPPA because over 32,500 patient records that were placed on the internet were, in

4  fact, fully available for viewing by anyone "surfing" the internet for 2 months – during which

5  time there were no passwords or encryption that preserved the confidentiality of the medical

6  records.

7      29.    The medical records that were disclosed, released, and improperly maintained

8  included patients' names, dates of birth, addresses, financial information and medical records.

9      30.    Upon information and belief, on or about December 2, 2013, at least one third

10  party viewed the confidential medical records of the COTTAGE HOSPITAL patients.  That

11  person contacted COTTAGE HOSPITAL to let them know that the medical records could be

12  viewed by anyone surfing the internet.

13      31.    COTTAGE HOSPITAL was responsible for the creation, maintenance,

14  preservation, storage and disposal of these private medical records.

15      32.    The medical record files were created by COTTAGE HOSPITAL in a format that

16  is easily accessible and allows medical records to be opened by anyone.

17      33.    The medical records were maintained without encryption.

18      34.    The medical records were maintained without password protection.

19      35.    The medical records were maintained without a firewall.

20      36.    The medical records were maintained without file access permissions that

21  prevented unauthorized access.

22      37.    The medical records were maintained on the internet without proper safeguards in

23  both hardware and software to prevent release to the public.

24      38.    The medical records were released and indexed by a major search engine after

25  publically acessable on the internet.  COTTAGE HOSPITAL can request that the data does not

26  show up in search results, but the data is still located in the hands of an unauthorized corporate

27  third party.

28

1      39.    Between September 29, 2009 through December 2, 2013, Plaintiff sought medical

2  treatment at COTTAGE HOSPITAL on multiple different occasions.   During each of his visits,

3  Plaintiff provided confidential information to COTTAGE HOSPITAL, including his name,

4  address, telephone number, date of birth, financial information, medical information, and other

5  personal confidential information. During each of these visits, COTTAGE HOSPITAL

6  generated and collected information concerning Plaintiff's health and medical condition,

7  including his diagnosis.  At no time during his visits did Plaintiff provide written authorization

8  that his private medical information be disclosed to any third party.

9      40.    On or about December 6, 2013 Plaintiff received a letter in the mail

10  acknowledging that his confidential medical records had been negligently released and

11  maintained.

12      41.    Defendant disclosed the confidential medical information of Plaintiff and the Class

13  without obtaining written authorization.

14      42.    As a result of this disclosure, Plaintiff and the Class were injured in that they

15  suffered a violation of their privacy rights.

16

17                           **CLASS ACTION ALLEGATIONS**

18      43.    Plaintiff brings this action on his own behalf and on behalf of all persons similarly

19  situated pursuant to Code of Civil Procedure § 382.  Plaintiff seeks to represent the following

20  class:

21            *All Patients who attended a Cottage Health System Hospital, such as Santa*

22            *Barbara Cottage Hospital, Santa Ynez Valley Hospital, or Goleta Valley Hospital,*

23            *from September 29, 2009 and December 2, 2013, whose confidential information*

24            *and/or records were negligently released and/or disclosed by Cottage Hospital*

25            *and/or contractors acting on behalf of Cottage Hospital during any portion of the*

26            *period from October 8, 2013 through December 2, 2013.*

27

28

44.     Upon information and belief, the scope of this class definition, including its temporal scope, may be further refined after discovery of Defendant's and/or third party records.

45.     Excluded from the class are governmental entities, Defendants, any entity in which Defendants has a controlling interest, and Defendants' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns. Also excluded from the class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

46.     Plaintiff's claims are typical of the claims of the class. Plaintiff is a member of the class he seeks to represent. Plaintiff is a member of a class of consumers, and the members of this class of consumers were similarly situated and similarly affected by the conduct alleged of Defendant and incurred similar damage, as alleged in this complaint, as a result of the conduct of Defendant. Members of the class are ascertainable from Plaintiff's description of the class and/or Defendant's records and/or records of third parties accessible through discovery.

47.     The representative Plaintiff will fairly and adequately represent the members of the class and have no interests which are antagonistic to the claims of the class. The Plaintiff's interests in this action are antagonistic to the interests of Defendant, and she will vigorously pursue the claims of the class.

48.     The representative Plaintiff has retained counsels who are competent and experienced in consumer class action litigation, and have successfully represented consumers in complex class actions.

49.     Common questions of law and fact impact the rights of each member of the class and a common remedy by way of permissible damages and/or injunctive relief is sought for the class.

50.     There are substantial questions of law and fact common to all members of the class which will predominate over any individual issues. These common questions of law and fact include, without limitation:

        a.     Whether Defendants negligently maintained the confidentiality of medical records of Plaintiff and the class;

b.   Whether Defendants negligently disclosed and/or released medical records of Plaintiff and the class;

c.   Whether Defendants undertook appropriate preventative actions to protect the confidential information or records against release consistent with their obligations under the CMIA and HIPPA; and

d.   Whether such conduct constitutes a violation of California Civil Code § 56, *et seq.*

51.   A class action provides a fair and efficient method, if not the only method, for adjudicating this controversy. The substantive claims of the representative Plaintiff and the class are nearly identical and will require evidentiary proof of the same kind and application of the same law.

52.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because Plaintiff believes class members number in the tens of thousands and individual joinder is impracticable. The expense and burden of individual litigation would make it impracticable or impossible for proposed class members to prosecute their claims individually. Trial of Plaintiff's and the class members' claims is manageable. Unless a class is certified, Defendant will remain free to continue to engage in the wrongful conduct alleged herein without consequence.

53.   There is no plain, speedy, or adequate remedy other than by maintenance of this class action because Plaintiff is informed and believes that damage to each member of the class is relatively small, making it economically unfeasible to pursue remedies other than by way of a class action.

54.   The persons in the class are so numerous that the joinder of all such persons individually in this case is impracticable, and the disposition of their claims in this case and as part of a single class action lawsuit, rather than hundreds or thousands of individual lawsuits, will benefit the parties and greatly reduce the aggregate judicial resources that would be spent if this matter were handled as hundreds or thousands of separate lawsuits.

1    55.    Plaintiff knows of no difficulty that will be encountered in the management of this

2  litigation, which would preclude its maintenance as a class action.

3

4                          **FIRST CAUSE OF ACTION**

5    **VIOLATION OF CALIFORNIA CONFIDENTIALITY OF MEDICAL INFORMATION**

6       **ACT BY NEGLIGENT DISLOSURE (California Civil Code § 56, *et seq.*)**

7          **(By Plaintiff and all class members against all Defendants and Does 1-50)**

8    56.    Plaintiff and the class re-allege and incorporate by reference the allegations

9  contained in the preceding paragraphs of this complaint, as though fully set forth herein.

10    57.    California Civil Code § 56, *et seq.*, also known as the Confidentiality of Medical

11  Information Act ("CMIA"), prohibits health care providers from disclosing medical information

12  regarding a patient without first obtaining written authorization from the patient.

13    58.    COTTAGE HOSPITAL and defendant INSYNC are providers of health care as

14  defined by the CMIA.

15    59.    At all relevant times, Defendants had a legal duty to protect the confidentiality of

16  Plaintiff's and the class members' medical information.

17    60.    COTTAGE HOSPITAL came into possession of Plaintiff's and class members'

18  personally identifiable medical information while providing health care services and had a duty

19  to exercise reasonable care in preserving the confidentiality of that information.

20    61.    Defendant INSYNC came into possession of Plaintiff's and class members'

21  personally identifiable medical information while providing contracted services for COTTAGE

22  HOSPITAL.

23    62.    Defendants did not obtain Plaintiff's or class members' written authorization to

24  disclose their personally identifiable medical information.

25    63.    Defendants disclosed Plantiff's and class members' confidential information on

26  the internet, where it was viewed by the public.

27    64.    Defendants failed to exercise due care to prevent the release or disclosure of

28  private medical information of Plaintiff and the class members without their written

1    authorization.  Among other things, the medical records were disclosed on the internet without

2    encryption or passwords, and COTTAGE HOSPITAL failed to undertake appropriate

3    preventative actions to protect the confidential information or records against release consistent

4    with their obligations under the CMIA and HIPPA

5        65.    Under the CMIA and HIPPA, COTTAGE HOSPITAL had a non-delegable duty

6    to not only maintain the security of confidential medical records that are released/disclosed on

7    the internet, but also to institute sufficient security management safeguards to detect and prevent

8    such breaches from occurring.

9        66.    As a direct and proximate result of Defendants' breach of its legal duty to protect

10   Plaintiff's and other class members' confidential information, Plaintiff and other class members

11   have been injured in that their privacy rights have been violated.

12       67.    California Civil Code § 56.36(b) provides as follows:

13            (b)    In addition to any other remedies available at law, any individual may bring

14            an action against any person or entity who has negligently released confidential

15            information or records concerning him or her in violation of this part, for either or

16            both of the following:

17               1.  Nominal damages of one thousand dollars ($1,000). In order to recover

18                   under this paragraph, it shall not be necessary that the plaintiff suffered or

19                   was threatened with actual damages.

20               2.  The amount of actual damages, if any, sustained by the patient.

21       68.    Pursuant to § 56.36(b), Plaintiff and the Class are entitled to nominal statutory

22   damages of $1,000 per class member.

23                              **SECOND CAUSE OF ACTION**

24   **VIOLATION OF CALIFORNIA CONFIDENTIALITY OF MEDICAL INFORMATION**

25       **ACT BY NEGLIGENT MAINTENANCE (California Civil Code § 56, *et seq.*)**

26            **(By Plaintiff and all class members against all Defendants and Does 1-50)**

27       69.    Plaintiff and the class re-allege and incorporate by reference the allegations

28   contained in the preceding paragraphs of this complaint, as though fully set forth herein.

70.     The CMIA contains a cause of action for negligent maintenance of confidential medical records, under Civil Code § 56.101.

71.     COTTAGE HOSPITAL and defendant INSYNC are providers of health care as defined by the CMIA.

72.     At all relevant times, Defendants had a legal duty to maintain the confidentiality of Plaintiff's and the class members' medical information.

73.     COTTAGE HOSPITAL came into possession of Plaintiff's and class members' personally identifiable medical information while providing health care services and had a duty to exercise reasonable care in maintaining the confidentiality of that information.

74.     Defendant INSYNC came into possession of Plaintiff's and class members' personally identifiable medical information while providing contracted services for COTTAGE HOSPITAL, and had a duty to maintain the confidentiality of that information.

75.     Defendants did not obtain Plaintiff's or class members' written authorization to release their personally identifiable medical information on the internet such that it could be viewed by the public.

76.     Under the CMIA and HIPPA, Defendants had a duty to not only maintain the security of confidential medical records that are released/disclosed on the internet, but also to institute sufficient security management safeguards to detect and prevent such breaches from occurring.

77.     Plaintiff's and the class members' confidential medical information was released on the internet, and viewed by at least one member of the public.

78.     Defendants failed to exercise due care to prevent the release or disclosure of private medical information of Plaintiff and the class members without their written authorization.  Among other things, the medical records were released on the internet without encryption or passwords, and Defendants failed to undertake appropriate preventative actions to protect the confidential information or records against release consistent with their obligations under the CMIA and HIPPA.

79.     As a direct and proximate result of Defendants' breach of its legal duty to protect Plaintiff's and other class members' confidential information, Plaintiff and other class members have been injured in that their privacy rights have been violated.

80.     Pursuant to Civil Code § 56.36(b), incorporated by reference into Civil Code § 56.101, Plaintiff and the Class are entitled to nominal statutory damages of $1,000 per class member.

**PRAYER**

Wherefore, Plaintiff, the Class and Subclass pray for judgment as follows:

1.     For statutory damages available to the Class as provided by California Civil Code Section 56.36(b)(1);

2.     For interest available at law;

3.     For reasonable attorneys' fees and costs; and

4.     For such other and further relief as the Court deems just and proper.

DATED: January 28, 2014                    KABATECK BROWN KELLNER LLP


By:     _____
        Brian S. Kabateck
        Richard L. Kellner
        *Counsel for Plaintiffs and the Proposed Class*


                                           ERNST LAW GROUP

By:     _____
        Don A. Ernst
        Taylor Ernst
        *Counsel for Plaintiffs and the Proposed Class*

1

## **DEMAND FOR JURY TRIAL**

2
     Plaintiff hereby demands trial by jury of all claims and causes of action in this lawsuit.

3
  DATED: January 27, 2014            KABATECK BROWN KELLNER LLP

4

5

6
                         By:   _____
                              Brian S. Kabateck

7
                              Richard L. Kellner
                              *Counsel for Plaintiffs and the Proposed*

8
                              *Class*

9
                      ERNST LAW GROUP

10

11
                         By:   _____
                              Don A. Ernst

12
                              Taylor Ernst
                              *Counsel for Plaintiffs and the Proposed*

13
                              *Class*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Class Action Complaint